**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:25-cv-04053-RMR

EDILBERTO ARNEZ COPA,

      Petitioner,

v.

KRISTI NOEM, Secretary of Homeland Security in her official capacity,
TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement in his official
capacity,
ROBERT GUARDIAN, Denver Field Office Director, U.S. Immigration and Customs
Enforcement in his official capacity,
PAMELA BONDI, Attorney General in her official capacity, and
JUAN BALTASAR, Warden, Denver Contract Detention Facility in his official capacity,

      Respondents.

---

## ORDER

---

      Pending before the Court is Petitioner Edilberto Arnez Copa's Petition for Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. Respondents filed

a Response to the Petition, ECF No. 8, and Petitioner filed a Reply to the Response, ECF

No. 11. The Court has reviewed the Petition, the related briefing, and the applicable case

law. For the reasons stated below, the Petition, ECF No. 1, is GRANTED.

## I.      BACKGROUND

      Petitioner is a citizen of Bolivia. ECF No. 1 ¶ 22. He has two young U.S. citizen

children, ages five and eight, and a long-term partner. *Id.* ¶ 31. Petitioner entered the

United States in June 2007, and it is not believed he was encountered by immigration officials upon entry into the United States. *Id.* ¶ 22. In 2013, Petitioner applied for asylum and, on February 25, 2013, was granted withholding of removal by an Immigration Judge pursuant to 8 U.S.C. § 1231(b)(3). *Id.* ¶ 23. To date, Respondents have not taken any steps to reopen the proceedings and rescind the grant of withholding. *Id.* After the government determined that Petitioner could not be removed to any other country, they placed him on an Order of Supervision and granted him legal employment authorization in the United States. ECF No. 11 at 2. Since his grant of withholding of removal, Petitioner has maintained lawful and gainful employment supported by his consistently renewed Employment Authorization Document ("EAD"). ECF No. 1 ¶ 24. Over a decade later, ICE abruptly revoked Petitioner's Order of Supervision. ECF No. 11 at 2. On December 2, 2025, Petitioner was arrested by immigration officials conducting random enforcement operations at a Home Depot in Maryland. ECF No. 1 ¶ 25. He was subsequently detained by U.S. Immigration and Customs Enforcement ("ICE") officers and transferred to the Denver Contract Detention Facility in Aurora, Colorado. *Id.*

Petitioner has been told by ICE officials that the government intends to remove him to Mexico. *Id.* ¶ 27. Petitioner has no legal immigration status in Mexico and there is significant possibility he will promptly be sent to Bolivia, where it has already been determined that he will face persecution. *Id.* ¶ 28.

## II.    LEGAL STANDARD

### A.    Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at *1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.").

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

### B.    Post-Removal Detention Under § 1231

Two sections of the Immigration and Nationalization Act ("INA") authorize detention—8 U.S.C. § 1226, which concerns noncitizens who are not yet subject to a removal order, and 8 U.S.C. § 1231, which operates in the post-removal context. Petitioner is detained pursuant to § 1231. Under § 1231, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." § 1231(a)(1). The noncitizen must be detained during this initial 90-

day timeframe, *see* § 1231(a)(2), which is "referred to as the 'removal period,' " § 1231(a)(1)(A). If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. § 1231(a)(3). However, certain categories of noncitizens who have been ordered removed—including inadmissible or criminal noncitizens, or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the removal order— "may be detained beyond the removal period." § 1231(a)(6). The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority.

### III.    ANALYSIS

Petitioner first argues that his detention violates the standard set by the Supreme Court in *Zadvydas*. In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "does not permit indefinite detention," although the statute does not specify a time limit on how long the DHS may detain a noncitizen in the post-removal period. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, "in light of the Constitution's demands," a noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*.; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). The Supreme Court reasoned that "Congress previously doubted the constitutionality of detention for more than six months" and recognized six months as presumptively reasonable. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined

that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, Petitioner has been detained since December 2, 2025 and has not been in custody long enough for *Zadvydas* to apply. However, the Court is persuaded by Petitioner's due process arguments.

Petitioner was granted withholding of removal on February 25, 2013 and subsequently placed on an Order of Supervision. In December 2025, ICE revoked Petitioner's Order of Supervision and took him back into custody. Under 8 C.F.R. § 241.1(*l*)(1), "[a]ny alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." The regulation clearly states "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.1(*l*)(1).

As Petitioner notes, there are a number of issues with his Notice of Revocation of Release. First, the notice does not provide the reasons for revocation. *See* ECF No. 8-2. Instead, it simply states "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." *Id.* Section 241.1(*l*)(2) provides reasons a revoking official may revoke release, such as "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release

would no longer be appropriate." Here, Petitioner was not provided any reasoning or explanation for the revocation of his release.

Second, the Notice of Revocation of Release does not provide the date in which Petitioner was granted Withholding of Removal, the third country the government "previously notified" Petitioner was under review, or the third country willing to accept Petitioner's removal. ECF No. 8-2. Without the information regarding the third country, Petitioner was not provided sufficient information to properly respond to the revocation. Even if he were given the informal interview required under 8 C.F.R. § 241.1(*l*)(1), which he was not, Petitioner could not have responded without the crucial information of where he was being removed.

Third, the Notice of Revocation of Release was not signed at all, much less by an authorized official required under 8 C.F.R. § 241.1(l)(2). The "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section" or a "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.1(l)(2). Here, it is unclear who revoked Petitioner's release. It is undisputed that Nikkita Baker, whose name appears on the Notice, was no longer serving as the Acting Field Office Director at the time the Notice was administered. ECF No. 11 at 4. Regardless, the Notice of Revocation of Release is clearly deficient without a signature from any Executive Associate Commissioner or Field Officer Director.

Finally, even if the Notice of Revocation of Release were not deficient, Petitioner was not given his mandatory informal interview to respond to the reasons for revocation stated in the notification. Thus, Petitioner argues Respondents violated his due process rights. Respondents contend that Petitioner has not shown any procedural violation and, even if there was some deviation from procedures set forth in 8 C.F.R. § 241.4(l)(2), that deviation does not amount to a due process violation. ECF No. 8 at 13-14. Then, Respondents assert "the proper remedy for denial of procedural due process would be the proper process, not immediate release." *Id.* at 15. The Court disagrees. "At bottom, because ICE violated its own regulations when it detained Petitioner without notifying him of the reasons why he was being detained, Petitioner is entitled to habeas relief." *Sanchez v. Bondi*, No. 1:25-CV-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025) (quoting *Roble v. Bondi*, Case No. 25–cv–3196 (LMP/LIB), —— F. Supp. 3d ——, 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025)). Thus, the Court grants the Petition.[1]

## IV.   CONCLUSION

For the reasons stated above, it is ORDERED that Mr. Arnez Copa's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Petitioner subject to the terms of his Order of Supervision. Respondents shall file a status report within **two days** of this Court's order to certify compliance as to Mr. Arnez Copa's release.

---

[1] Given the due process violations under 8 C.F.R. § 241.4(l), the Court need not address Petitioner's due process claims related to third-country deportations.

DATED: March 9, 2026

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge